# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

CHRISTOPHER D. ARIOLA,

                         Petitioner,

       - v -                                Civ. No. 9:08-CV-116
                                             (GLS/RFT)

DARWIN LACLAIR; NEW YORK STATE         [Lead Case]
DIV. OF PAROLE,

                         Respondent.

---

CHRISTOPHER D. ARIOLA,

                        Plaintiff,

       - v -                                Civ. No. 5:13-CV-577
                                             (GLS/RFT)

JIM ANDERSON; MOSS; TRACY CARMODY,      [Member Case]

                        Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

CHRISTOPHER D. ARIOLA
Petitioner/Plaintiff, *Pro Se*
102 Gifford Parkway
Syracuse, NY 13214

HON. ERIC T. SCHNEIDERMAN            THOMAS B. LITSKY, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Respondents[1]
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**
## REPORT-RECOMMENDATION and ORDER

---

[1] The New York State Attorney General has not yet made an appearance on behalf of Defendants Jim Anderson, Moss, and Tracy Carmody, who were named in the Complaint originally filed in the Member Case, *Ariola v. Anderson, et al.*, Civ. No. 5:13-CV-577. *See Ariola v. LaClair*, Civ. No. 9:08-CV-116 ("Lead Case"), at Dkt. Nos. 39 & 41.

This action, which has been pending since 2008, was initiated, *pro se*, by Christopher Ariola as a means of obtaining *habeas corpus* relief by challenging his 2007 revocation of parole. What started as a straightforward quest for *habeas relief* has since morphed into a civil rights challenge to the very same parole revocation. To categorize the procedural history of this case as unique would truly be an understatement. Indeed, this is the first time this Court has issued a Report-Recommendation that concomitantly involves (1) an assessment of the mootness of a *Habeas Corpus* Petition, filed pursuant to 28 U.S.C. § 2254, challenging parole revocation; (2) an assessment of the viability of a civil rights violation, pursuant to 42 U.S.C. § 1983, stemming from the same parole revocation; and (3) an initial screening of a companion civil rights action, filed pursuant to 42 U.S.C. § 1983. In light of the labyrinthine history that has brought us to this uncommon precipice, it is incumbent upon this Court to succinctly explain what procedurally has transpired in this action.

## I. PROCEDURAL HISTORY

On January 31, 2008, the Clerk of the Court received an undated Petition for a Writ of *Habeas Corpus* from Christopher Ariola and accordingly opened Civil Case No. 9:08-CV-1116 ("Lead Case"). *See* Dkt. No. 1, Pet. By this Petition, Ariola challenged, pursuant to 28 U.S.C. § 2254, the 2007 revocation of his parole. The Petition named as Respondents Darwin E. LeClair and the New York State Division of Parole. *Id.* On February 4, 2008, the Honorable Gustave J. DiBianco, now-retired United States Magistrate Judge, issued a Decision and Order directing the Respondents to answer the Petition and provide relevant State Court Records.[2] Dkt. No. 3. On April

---

[2] The focal point of this Decision and Order was the question of whether the Court should excuse Ariola's patent failure to exhaust available state court remedies prior to bringing this application for *habeas* relief. Dkt. No. 3. Magistrate Judge DiBianco stated that there was insufficient information in the Petition to allow for a determination of

(continued...)

29, 2008, Respondents filed an Answer along with the relevant State Court Records. Dkt. Nos. 7 & 8 (hereinafter "State Ct. R."). Their opposition to the Petition rested mostly in Ariola's failure to exhaust, as well as the contention that he was afforded all the process he was due during his parole revocation proceedings. Dkt. No. 7. On May 8, 2008, Ariola filed a Traverse, Dkt. No. 9, and at that point the case was ready for review by the assigned Magistrate Judge, who at that time was Magistrate Judge DiBianco. But, on April 17, 2009, this matter was reassigned to the undersigned. Dkt. No. 10.

On November 2, 2011, after more than three years had elapsed since the initiation of this action, Ariola filed a Motion to Amend his Petition, Dkt. No. 15, which was opposed by Respondents, Dkt. No. 16. Nevertheless, on January 27, 2012, the undersigned issued a Decision and Order granting in part the request to amend, Dkt. No. 18, and the Amended Petition was filed with the Court on February 13, 2012, Dkt. No. 19. As noted by the Court, although the Amended Petition was not so different from the Original Petition, we provided Respondents an opportunity to supplement their Answer and provide further State Court Records if necessary. Dkt. No. 18. After obtaining multiple extensions of time to file a response, Respondents sought permission to limit their response to the issue of whether the Petition is moot. *See* Text Orders, dated Mar. 23, 2012 & May 11, 2012; Dkt. No. 23, Resp't Lt.-Mot., dated June 14, 2012. According to Respondents, since the 2007 parole revocation, Ariola had been re-released on parole conditions and was no longer in custody pursuant to the parole revocation at issue.[3] Dkt. No. 23. The request to

---

[2](...continued)
that issue and directed service of the Petition on the Respondents. *Id.*

[3] As explained by Respondents, Ariola had been re-released on parole on April 3, 2009. Dkt. No. 23. However, that parole was similarly revoked on September 16, 2010, when it was determined that Ariola violated his conditions
(continued...)

limit the response was granted and the Answer, relevant State Court Records, and accompanying Memorandum of Law were filed on June 22, 2012. Text Order, dated June 15, 2012; Dkt. Nos. 24 (hereinafter "Supp. State Ct. R.") & 25. On July 10, 2012, Ariola filed a Traverse. Dkt. No. 28. And, once again, the matter seemed ripe for a report-recommendation by the assigned Magistrate Judge.

Then, on March 13, 2013, Respondents filed a Letter-Brief in further support of their request to dismiss the Amended Petition as moot. Dkt. No. 29. According to Respondents, after another parole revocation unrelated to the one challenged in this action, Ariola was reincarcerated; subsequently, Ariola completed the maximum expiration date of his sentence and was released from prison on March 5, 2013 without any parole supervision. *Id.* This news propelled the trajectory of this action to meander wildly.

Ariola's response to the Respondents' Letter was to seek permission to convert this *Habeas Corpus* Petition to a civil rights Complaint brought pursuant to 42 U.S.C. § 1983. Dkt. No. 32. The Court was troubled by the complication posed by Ariola's request, but ever mindful of the Second Circuit's dictate placing the onus on the District Court to liberally interpret *pro se* filings and find them to raise the strongest argument suggested therein,[4] the undersigned decided to entertain Ariola's request. But, instead of converting the action, which raised inherent statute of limitations flags, we deemed the action, pursuant to Second Circuit precedent, as originally brought pursuant

---

[3](...continued)
of parole, thus, his incarceration at that moment in time was not due to the parole revocation at issue in this action. *Id.*

[4] *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191 (2d Cir. 2008); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

to both 28 U.S.C. § 2254 and 42 U.S.C. § 1983. Dkt. No. 33 (citing *Thompson v. Choinski*, 525 F.3d 205, 209-10 (2d Cir. 2008), for the proposition that if a *habeas* petitioner alleges facts entitling him to relief, a court should treat the claims as properly pleaded in the first instance as seeking "relief under both a habeas statute and a § 1983 in a single pleading"). To be fair, we provided Respondents with an opportunity to oppose any § 1983 claims that Ariola may have originally stated in this action.

In response, on June 7, 2013, Respondents filed a Motion for Judgment on the Pleadings seeking dismissal of the *habeas* and civil rights claims. But, just prior to the filing of this Motion, Ariola, beating Respondents to the proverbial punch, complicated matters further when he filed a separate civil rights action against three individual Defendants regarding the subject 2007 parole revocation. *See Ariola v. Anderson*, Civ. No. 5:13-CV-577 (GLS/RFT) ("Member Case"), at Dkt. No. 1. Accompanying that civil rights Complaint was a Motion to Proceed *in Forma Pauperis* ("IFP") and a Motion to Consolidate both pending actions. *Id.*, at Dkt. Nos. 3 & 4. On June 18, 2013, this Court determined that allowing these similar cases, based so clearly on the same nucleus of facts, to continue independently would be a waste of judicial resources and issued an Order consolidating both cases and granting Ariola permission to proceed IFP. *Id.*, at Dkt. No. 7. However, in an effort to avoid any further complication, we reserved on directing service on the newly named individual Defendants and instead explained that we would perform an initial screening of the new § 1983 Complaint at the time we review the issues that have been fully briefed in the original *Habeas* case. The newly filed Complaint was filed in the Lead Case and we granted Respondents in the *Habeas* action an opportunity to supplement their Motion for Judgment on the Pleadings; Respondents provided a brief response on June 19, 2013. Lead Case at Dkt. No. 41.

On June 24, 2013, Ariola filed his Opposition to the Motion for Judgment on the Pleadings, which he supplemented a few days later. Lead Case at Dkt. Nos. 42 & 45. At long last, it appears that all matters that can be are fully briefed and this case is, once again, ripe for review.

## II. DISCUSSION

As set forth above, this case presents numerous procedural anomalies that complicate the manner in which this Report-Recommendation addresses each of the presented claims for relief. The Court will first address Ariola's initial request for *Habeas* relief. Then, the Court will assess Respondents' Motion for Judgment on the Pleadings insofar as the *Habeas* Petition, and Amended Petition, can be construed as having been originally brought pursuant to 42 U.S.C. § 1983. Lastly, the Court will perform an initial screening, pursuant to 28 U.S.C. § 1915, of the civil rights Complaint initially filed in the Member Case. To ensure clarity, the Court will divide the Report-Recommendation into sections, with each of the three assessments containing its own applicable standard of review and statement of fact.

### A. *Habeas Corpus* Petition

Ariola initiated this action by filing a Petition for a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254. By his Amended Petition, Ariola asserts that his parole was revoked without due process of law, the conditions of his parole were unconstitutionally vague, and the violations of his parole conditions were insubstantial and did not warrant revocation. Dkt. No. 19, Am. Pet. Respondents oppose the Amended Petition and move to dismiss it on the grounds that Ariola's claims are moot in light of his re-release on parole conditions and subsequent completion of the entirety of his sentence. Dkt. No. 25 & 37. For the reasons that follow, we recommend denying the Petition on the grounds that it is moot.

*1. Factual Background*

The following facts are adduced from the State Court Records provided by Respondents. On December 2, 2002, Ariola pled guilty to Manslaughter in the First Degree and Attempted Robbery in the Third Degree in violation of New York Penal Law §§ 125.20(1), 110.00, and 160.05. *See* State Ct. R., Ex. D, Heather R. Rubinstein, Esq., Affirm., dated July 17, 2007, at Ex. A, Sentence & Commitment R., dated Dec. 2, 2002. He was sentenced to a determinate term of seven years imprisonment and five years of post-release supervision for the manslaughter conviction, and an indeterminate term of one to three years for the attempted robbery conviction, with both sentences to run concurrently. *Id.*

On February 26, 2007, Ariola was conditionally released under supervision. *Id.* at Ex. B, Violation of Release Rep., dated Feb. 26, 2007, at p. 1. As part of the conditions of his parole, Ariola was required to participate in anti-aggression and anti-violence counseling; these conditions were further modified on March 6, 2007, with the requirement that Ariola enter and complete Central New York ("CNY") Services and could not discontinue the program without written permission from his parole officer. *Id.*

On April 4, 2007, a parole warrant was issued based upon Ariola's violation of certain conditions of his parole,[5] including his failure to complete and comply with treatment plans, failure to respond truthfully to his parole officer when questioned about his mental health appointments, and his admission that he refused to sign documents which would have led to a second mental health assessment. *Id.* And on April 5, 2007, a notice of violation was issued setting both preliminary and

---

[5] The specifics of the allegations leading to the issuance of a parole warrant and eventual revocation of parole will be discussed in more detail when the Court assesses Ariola's civil rights violation allegations under 42 U.S.C. § 1983. *See infra* Part II.C.2.

final hearing dates. *Id.* at Ex. C, Notice of Violation, dated Apr. 5, 2007.

A final parole revocation hearing was held on May 22, 2007, wherein it was determined that Ariola had violated the conditions directing him to comply with the treatment plans of CNY Services and to be truthful with his parole officer. State Ct. R., Ex. A, Tr. of Parole Revocation Hr'g, dated May 22, 2007, at pp. 48–50. The administrative law judge ("ALJ") presiding over the hearing recommended that Ariola receive a time assessment of twenty-four months. *Id.* at p. 50. Ariola appealed. The ALJ's determination was affirmed by the Commissioner on June 11, 2007, and the recommended twenty-four month time assessment was imposed by the Division of Parole. State Ct. R., Ex. B, Addendum to Parole Revocation Dec. Notice, dated June 11, 2007. Ariola appealed that determination and the State Board of Parole affirmed on January 30, 2008. State Ct. R., Ex. M, Admin. Appeal Dec. Notice, dated Jan. 30, 2008.

On January 31, 2008, just one day after the State Board of Parole affirmed the parole violation revocation, this Court received Ariola's undated Petition for a Writ of *Habeas Corpus*. During the pendency of that Petition, Ariola was again conditionally released on parole on April 3, 2009. Supp. State Ct. R., Ex. 1, Cert. of Release to Parole Supervision, dated Apr. 2, 2009. Ariola was later charged with violating several conditions of that parole when, on August 25, 2010, he traveled outside of Onondaga County without first securing permission, possessed alcohol, threatened to kill a woman and her children, and caused that woman physical injury. Supp. State Ct. R., Ex. 2. As a result of these charged violations, Ariola's parole was again revoked and he received a twenty-two month time assessment. The earliest date for release on parole was set for June 28, 2012. Supp. State Ct. R., Ex. 5, Admin. Appeal Dec. Notice (undated), & Ex. 7, Inmate Information Printout from Dep't of Corr. and Cmty. Supervision Website, dated June 19, 2012. On

March 5, 2013, Ariola was discharged from state prison after reaching the maximum expiration date of his sentence and was no longer subject to parole supervision.[6]  Dkt. No. 29.

## 2. Mootness

Respondents contend that because during the pendency of this proceeding, Ariola was released from the sentence under attack, that being the May 28, 2007/June 11, 2007 revocation of parole, his claims for *habeas* relief are moot.  They first posed this argument when it came to their attention that Ariola had been re-released on parole on April 3, 2009, and then further supplemented this argument after the maximum expiration date of Ariola's underlying sentence arrived on March 5, 2013.  Thus, it is Respondents' contention that this Court can no longer provide any *habeas* relief to Ariola thereby rendering the claims moot.

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to those cases which present a "case or controversy."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Swaby v. Ashcroft*, 357 F.3d 156, 159 (2d Cir. 2004).  "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotations and citations omitted); *Lavin v. United States*, 299 F.3d 123, 128 (2d Cir. 2002).  "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983); *see also Clayton v. Int'l Union, United Automobile, Aerospace & Agric. Implement Workers*, 451 U.S. 679, 692 (1982) (noting that if a plaintiff "receive[s] the full

---

[6] It appears that on February 6, 2012, the Parole Board  determined that Ariola would be conditionally released, with the earliest release date being June 28, 2012.  While we have not received any records confirming his re-release on parole on June 28th, nor would we have expected such documentation in light of the claims presented, it appears that Ariola was released at some point and then re-incarcerated, perhaps through another parole violation, on January 18, 2013, and served the remainder of his sentence in prison.  *Compare* Supp. State Ct. R., Ex. 6, Parole Bd. Release Dec., dated Feb. 6, 2012, *with* Dkt. No. 29-2.

relief he requested" the action becomes moot). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemma,* 523 U.S. at 7 (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-478 (1990)).

In the context of *habeas corpus* petitions, a petitioner no longer in custody must demonstrate a "collateral consequence" of the detention that can be remedied by granting the writ. *Spencer v. Kemna*, 523 U.S. at 7. When a *habeas* petitioner challenges the underlying criminal conviction, there is a presumption that collateral consequences exist. *Sibron v. New York*, 392 U.S. 40, 54-55 (1968) (cited in *Spencer v. Kemna*, 523 U.S. at 10-12). The instant Petitioner, however, is not challenging the validity of his underlying conviction; rather, he challenges the validity of a parole revocation hearing. In the context of parole revocation, collateral consequences are not presumed and it is the Petitioner's burden to demonstrate a concrete injury-in-fact stemming from the revocation. *Spencer v. Kemna*, 523 U.S. at 13-14.

We note that a prisoner challenging a parole revocation hearing is, at most, entitled to a re-hearing, and so, a prisoner who has already served his sentence or who has been released ordinarily would not obtain any legal benefit from a determination that the parole revocation hearing was wrongly decided. *See Lebron v. Graham*, 2010 WL 2771878, at *3 (N.D.N.Y. July 12, 2010).

When first faced with the argument of mootness, Ariola contended that a live case or controversy existed, notwithstanding his re-release on parole conditions, because: (1) he is still subject to the allegedly unconstitutional condition of release that prompted his original 2007 parole revocation, and the constitutionality of those conditions is an issue capable of evading review; (2) the revocation affects his parole supervision intensity and score; and (3) he was collaterally estopped from bringing a civil lawsuit against CNY Services due to the 2007 parole revocation. *See generally*

Pet.'s 2d Traverse. But, when his maximum expiration of his sentence occurred, Ariola seemed to relent from seeking *habeas* relief and instead sought permission to convert his claim to a civil rights action pursuant to 42 U.S.C. § 1983. Dkt. No. 32.

We need not entertain any of these contentions because Ariola's release from prison wherein he is no longer subject to any parole conditions, having served the maximum expiration of his sentence, clearly renders this Court incapable of providing him <u>any</u> relief pursuant to the *habeas corpus* statute. And Ariola's request to convert his Petition is construed by this Court as an acquiescence to that assessment. The Court is keenly aware of the inherit unfairness of this situation wherein a claim seeking relief of this magnitude and importance should go stale due to an overly congested court docket.[7] This case has languished for many years on the Court's docket, and it is only in recent months that it had became complex in nature. Nevertheless, the Court has afforded Ariola much solicitude in construing his action as raising the strongest claims suggested therein and

---

[7] The Court notes that when this action was transferred to the undersigned on April 17, 2009, Ariola had already been re-released on conditions of parole. Had we issued a review of the Petition at that point in time, we would have considered his contentions that despite his release on other parole conditions, he may have continued to suffer collateral consequences and therefore a live case or controversy remained. Notwithstanding, even as early as May 8, 2008, when the matter was fully briefed before Magistrate Judge DiBianco, there was serious question, as borne out by the original filings by the parties, that Ariola did not properly exhaust his administrative remedies prior to seeking federal relief.

Generally, *habeas corpus* petitioners must exhaust the available state court remedies prior to seeking federal relief, unless the state corrective process is unavailable or that which is available would be ineffective. 28 U.S.C. § 2254(b)(1). Because Ariola stated in his Original Petition that he did not fully exhaust, but that state court avenues are rendered unavailable to him, a response was directed by Magistrate Judge DiBianco. Dkt. No. 1, Pet., at ¶¶ 3 & 4; Dkt. No. 3, Order. "To exhaust a denial of parole under New York Law, the inmate must first file an administrative appeal with the Division of Parole's Appeals Unit. If that appeal is denied, he must seek relief in state court pursuant to Article 78. . . . and if [that] petition is denied, the petitioner must appeal that denial to the highest state court capable of reviewing it." *Scales v. New York State Div. of Parole*, 396 F. Supp. 2d 423, 428 (S.D.N.Y. 2005) (internal quotation marks and citations omitted); *see also Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003) ("A petitioner satisfies the 'fair presentation' aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.") (internal quotation marks and citation omitted).

In responding to the Original Petition, Respondents contended that Ariola failed to fully exhaust his state court remedies when he failed to file an Article 78 petition challenging the revocation of his parole, and instead filed two state *habeas corpus* petitions. Dkt. No. 7-2 at pp. 14-15. Respondents further contended that Ariola had not fully pursued the state *habeas* petitions to the highest courts available, but more importantly, at that moment in time, he could still have filed an Article 78 petition. *Id.* at pp. 15-16.

we are ensuring by our analysis below that he is not placed in a position without some relief being considered by this federal court.

In light of this analysis, we recommend that Respondents' Motion be **granted** as to Ariola's claims for *habeas* relief and the *Habeas* Petition should be **denied**.

### B. Construing the *Habeas* Petition as a Civil Rights Complaint

As noted above, in response to Ariola's request to convert his *Habeas* Petition, this Court issued an Order construing his Original (and Amended) Petition as also raising civil rights violations, pursuant to 42 U.S.C. § 1983, and directed a response. Dkt. No. 33. On June 7, 2013, Respondents Darwin LaClair and the New York State Division of Parole filed a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), which is now fully briefed. Dkt. No. 37, Mot. for J. on Pleadings; Dkt. Nos. 42 & 45, Pl.'s Opp'n.

Since initiating this action, Ariola has contended that his parole was revoked because of his failure to sign privacy releases. He asserts that the revocation was unlawful because (1) the parole conditions he was found to have violated are unconstitutionally vague, (2) the revocation violated his due process rights, and (3) his violation was not substantial enough to warrant a revocation. Dkt. No. 19, Am. Pet, at ¶ 2.

### 1. *Standard of Review*

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (citation omitted). In applying Rule 12(c), a court must utilize the same standard as that applicable to a motion under Rule 12(b)(6). *The Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998). On a motion to dismiss

pursuant to Rule 12(b)(6), the court accepts as true all factual allegations in the complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (citation omitted). Further, "the court should construe the complaint liberally and draw inferences from the plaintiff's allegations in the light most favorable to the plaintiff." *Tamayo v. City of New York*, 2004 WL 137198, at *5 (S.D.N.Y. Jan. 27, 2004) (citing *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999)). The court need not credit conclusory statements unsupported by assertions of facts or legal conclusions and characterizations presented as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), and must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint, *Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is

not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

## 2. *Factual Allegations*

In our usual course of reviewing a motion for judgment on the pleadings, we would apply the above standard of review and take as true all factual allegations stated in the pleading and assess the viability of any claim for relief. Not surprisingly, this task is not so straightforward in this case.

When Ariola asked this Court to convert his *Habeas* Petition to a § 1983 Complaint, two obstacles were conjured up. First and foremost, should this Court consider this request as one seeking leave to amend and, if granted, deem this "new" pleading to have been "brought" as of the date of the request? If we pursued that route, Ariola would be stymied by a significant statute of limitations issue by seeking relief in 2013 for an alleged constitutional violation that took place in 2007. Or, faced with the futility of allowing such an amendment, would we instead have to determine whether it sufficiently related back to the initial filing? In light of his *pro se* status, and in an effort to neutralize this first obstacle, we determined, based upon Second Circuit precedent, that we had the ability, if not the obligation, to construe the action as originally having been brought as <u>both</u> a *habeas* petition and a civil rights complaint. *See* Dkt. No. 33 at p. 2 (citing *Thompson v. Choinski*, 525 F.3d 205 (2d Cir. 2008).

But sliding past, if not around, this first hurdle only created a second, more dire hurdle,

*-14-*

namely, who would be named as the proper defendants with regard to alleged civil rights violations.[8] It was not clear to this Court which individuals Ariola would intend to hold responsible for violating his civil rights, and it would not be proper for this Court to infer and *sua sponte* add individuals to this action. But before we had an opportunity to fully flesh that issue out, Ariola, perhaps sensing the troubles that lay ahead, initiated a separate civil rights actions naming individual Defendants whom he claims violated his constitutional rights.

Not surprisingly, the original Respondents moved for dismissal of the Petition-now-Complaint against them, not just because such claims are moot, but also because of Eleventh Amendment immunity and the lack of personal involvement. In light of these arguments, and because the Amended Petition and the Member Case Civil Rights Complaint are virtually identical, the Court will reserve its exhaustive recitation of the factual allegations of Plaintiff's civil rights claims for when we perform an initial screening of the companion Complaint. *See infra* Part II.C.2.

### 3. Mootness

Respondents/Defendants contend that even if this action were construed as brought pursuant to § 1983, the claims are still moot because the only relief sought, *i.e.* Ariola's release, has been provided to him. The Court agrees that to the extent Ariola seeks such relief, his claims are rendered moot by virtue of his release from prison and parole conditions after serving the maximum expiration of his sentence. The Court finds, however, that Ariola's request for relief, insofar as it

---

[8] A *habeas* petitioner must name as a respondent the person who has "custody" over him or her. 28 U.S.C. § 2242. In the case where a petitioner challenges his revocation of parole, the proper respondent has been construed to be the parole board who imposed the revocation. *See Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 948 (1976) (noting that Billiteri should have named the warden of the prison where he was incarcerated in rather than the parole board, as distinguishable from a situation where a prisoner had been released on parole and the parole board caused the current detention due to violation of the conditions of parole). A civil rights plaintiff seeking vindication under 42 U.S.C. § 1983, must name as defendants "persons," as defined by the statute, whom are alleged to have personally violated the plaintiff's constitutional rights.

pertains to § 1983, is not limited to injunctive relief. Instead, by asking the Court for "any further, proper and just relief . . . deem[ed] appropriate," it is sensible for us to construe Ariola's claim for relief as more than just injunctive in nature, but rather compensatory in nature seeking the value, if any, of damages sustained as a result of the alleged constitutional violations. Thus, we recommend that the Motion be **denied** as to the mootness of the § 1983 claims.

*4. Eleventh Amendment*

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984).

Accordingly, Plaintiff's § 1983 claims against the New York State Parole Board must be

dismissed insofar as New York State has not consented to suit in federal court.[9]

As for claims asserted against Darwin LeClair, to the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries,* 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . ."). Because we have already found claims for injunctive relief to be moot, the only relief sought herein is monetary and thus, LaClair is entitled to Eleventh Amendment Immunity insofar as he is being sued in his official capacity.

## 5. *Personal Involvement*

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions,

---

[9] Alternatively, the Court notes that Ariola's civil rights claims against the New York State Division of Parole, an entity that has since merged with the former Department of Correctional Services to form the Department of Corrections and Community Supervision, fails to state a cause of action because neither a State nor its agencies are considered to be a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998).

*-17-*

has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The only individual Defendant is Darwin LeClair, whom, upon information and belief, was the Superintendent of the correctional facility Ariola wherein was housed when this action began. The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if it can be shown that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

There are no allegations contained in any pleading before the Court that implicates Darwin LaClair in any wrongdoing whatsoever. His only involvement in this action is that he acted as Superintendent of the correctional facility where Ariola was housed when he started this litigation. He clearly had no involvement in any decisions made by the Division of Parole, nor its employees, and thus, the Motion should be **granted** as it pertains to LaClair.

### C. Companion § 1983 Complaint

As noted above, Ariola initiated a separate civil action by filing a civil rights Complaint with

the Clerk of the Court, accompanied by a request to have the new action consolidated with his earlier *habeas* action. *See* Member Case. Ariola also sought permission from the Court to proceed with that action *in forma pauperis* ("IFP"). The Court granted that request and directed that the cases be consolidated. However, we held off on performing an initial review and similarly abstained from directing service on the newly added individual Defendants until the Court had an opportunity to review all the pleadings presented by Ariola.

By his § 1983 Complaint, Ariola asserts that Defendant Jim Anderson, who was his former parole officer, Defendant Moss, who is another parole officer, and Defendant Tracy Carmody, who was an employee with CNY Services, violated his constitutional rights in connection with his 2007 parole revocation. The Court now performs the initial review of the Complaint pursuant to 28 U.S.C. § 1915(e).

### 1. Standard of Review

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action. In determining whether an action is frivolous, the Court must consider whether the Complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Id.* at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the Court

has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the Court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

In assessing whether a pleading states a claim for relief, courts employ the same standard used when assessing a motion to dismiss. A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff

has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80. The Court will now turn to a consideration of the Plaintiff's Complaint under the above standards.

## 2. Factual Allegations

In accordance with the applicable standard of review, the following facts are adduced from the newly filed § 1983 Complaint. Because the Complaint references and relies upon matters outside that pleading, and because we have consolidated this action with the prior *Habeas* matter, which contains the relevant State Court Records, the Court will also, when necessary, utilize information available therein in assessing the viability of the Complaint.[10]

On February 26, 2007, Ariola was released to parole. Am. Pet. at ¶ 10. Thereafter, on March 6, 2007, Parole Officer Anderson imposed special condition 13AA, which required Ariola to "enter and complete CNY Services" and further prohibits him from discontinuing that program without written permission from the parole officer.[11] Compl. at ¶ 18. Ariola was not advised at that time that he did not possess privacy rights guaranteed by the Health Insurance Portability and Accountability Act ("HIPAA"). *Id*.

On March 20, 2007, Defendant Tracy Carmody performed an assessment of Ariola, and,

---

[10] "Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

[11] Pursuant to his parole conditions, Ariola was also required to participate in anti-aggression, anti-violence counseling and be truthful with his parole officer. Dkt. No. 8, State Ct. R., Ex. D, Violation of Release Rep.

according to Ariola, she determined that he was "guarded, fearful and manipulative for exercising HIPAA rights." *Id.* at ¶ 19, n.1, & Ex. A. Based upon the content of the form provided to him for review and signature, which he refused to sign, it was Ariola's understanding that he could not be denied treatment due to his failure to execute a HIPAA waiver. *Id.* & Ex. C. Upon reviewing Carmody's assessment, Dr. Zebrowski, who is not a Defendant in this action, determined that Ariola did not have a chemical dependency and should be referred to Hutchings Psychiatric Center ("HPC") for another assessment. *Id.* at ¶ 21 & Ex. D. On March 28, 2007, Todd Bishop, another employee from CNY,[12] spoke with Ariola about the doctor's recommendation that he be assessed by HPC; Ariola left that conversation with the impression that he did not need to sign releases in order to get that second assessment. *Id.* at ¶ 23.

On April 3, 2007, Ariola was questioned by Defendant Anderson about his CNY assessment, to which Ariola replied, "[t]hey want me to get another assessment, do you want me to set it up?"[13] *Id.* at ¶ 24. Anderson replied in the affirmative and that concluded their conversation. *Id.* On April 4, 2007, Anderson received a five-paged fax from Carmody, which included the releases Ariola failed to sign as well as a letter from Carmody. *Id.* at ¶ 26 & Ex. H. Therein, Carmody wrote that

> Christopher [Ariola] was not cooperative enough in revealing historical information for us to make an accurate assessment of dangerousness. . . . It was determined that Christopher be referred to Hutchings Psychiatric Center for further assessment and treatment, however, Christopher refused to sign the necessary paperwork for CNY Services to initiate contact and begin the referral process.

*Id.* at n.2 & Ex. H.

---

[12] Mr. Bishop is not a named Defendant in this action.

[13] Notably, this conflicts with the testimony provided by Anderson and Ariola at the final parole revocation hearing. Both of them testified that in response to Anderson's question about the status of the CNY assessment, Ariola told him that they referred him to HPC, but that he is appealing that assessment. State Ct. R., Ex. A, Final Revocation Hr'g Tr., at pp. 9 & 43. According to Anderson's testimony, subsequent to his conversation with Ariola, Anderson contacted Carmody and was told that she could not share any information with him because Ariola refused to sign medical release forms. *Id.* at pp. 9-11.

That same date, Ariola arrived in Anderson's office and upon being questioned as to why he didn't sign the releases, Ariola stated that he "was following privacy laws, and CNY told me I don't have to." *Id.* at ¶ 27. Anderson advised Ariola that he did not have that right and he must sign the forms; Ariola complied and was immediately taken into custody by Defendants Anderson and Moss. *Id.*

On April 11, 2007, a preliminary parole revocation hearing was held. Ariola testified that CNY advised him of his right to not sign the releases and he was never advised otherwise by his parole officer. Nonetheless, upon the first direction from Anderson to sign the forms, Ariola complied. *Id.* at ¶ 28. Defendants Anderson and Carmody also testified at the preliminary hearing. *Id.* at ¶¶ 29-30. According the Ariola, at the conclusion of the hearing, probable cause was found to exist with regard to a violation of parole condition 13AA because the releases were not signed and such releases were mandatory in order to complete the HPC assessment.[14] *Id.* at ¶ 31. On April 13, 2007, Carmody sent Anderson another fax attaching her April 4th, 2007 assessment letter. The hand-written notation on the cover sheet stated "I played w/the wording a little." *Id.* at ¶ 32, n. 3, & Ex. J.

On May 22, 2007, a final revocation hearing took place.[15] Ariola, Anderson, Carmody, and Bishop each testified during the hearing. At the conclusion of the hearing, Ariola was found guilty of violating parole condition 13AA for not fully cooperating with his assessment and by not signing

---

[14] According to the Violation of Release Report, there were four violation charges stemming not just from his failure to complete forms and complete his assessment with CNY, but also his failure to participate in anti-aggression, anti-violence counseling, and his failure to be truthful with his parole officer. State Ct. R., Ex. D, Violation of Release Rep. While we don't have the record from the preliminary hearing, and absent any challenge in this regard, we presume that probable cause was found to support all four charges because these charges were the subject of the final revocation hearing held on May 22, 2007. State Ct. R., Ex. A.

[15] In the Complaint, Ariola states that the final hearing took place on May 28, 2007. Compl. at ¶ 33. However, in accordance with the relevant State Court Records submitted in response to the *Habeas* Petition, that final hearing actually took place on May 22, 2007. State Ct. R., Ex. A.

the releases, which were deemed necessary in order to complete the second assessment, as well as violating parole condition 5 requiring Ariola to be truthful with his parole officer, which Ariola failed to comply with when he failed to tell Anderson about the releases. *Id*. at ¶ 37; State Ct. R., Ex. A at pp. 48-50. A recommendation of a time assessment of twenty-four months was made to the parole board, which Ariola appealed. State Ct. R., Ex. A at p. 50, & Ex. D, Parole Revocation Dec. Notice.

The time assessment determination was affirmed by the Commissioner on June 11, 2007, and the recommended twenty-four month time assessment was imposed by the Division of Parole. State Ct. R., Ex. B, Addendum to Parole Revocation Dec. Notice. Ariola appealed that determination and the State Board of Parole affirmed on January 30, 2008. State Ct. R., Ex. M, Admin. Appeal Dec. Notice.

### 3. Timeliness

In § 1983 actions, the applicable statute of limitations is a state's "general or residual statute for personal injury actions." *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)) (alterations omitted). In New York, a three-year statute of limitations applies for personal injury actions, and thus to § 1983 actions as well. *Id*.; *see also* N.Y.C.P.L.R. § 214(5). "While state law supplies the statute of limitations for claims under § 1983, federal law determines when a federal claim accrues. The claim accrues when the plaintiff knows or has reason to know of the harm." *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (citation omitted).

Clearly, if we were to view the new Complaint in a vacuum, we would find that the 2013 Complaint raising constitutional violations from a 2007 parole revocation was patently untimely.

However, in the interest of justice and in light of his *pro se* status, we decline to take such a rigid view of the pleading. The Court notes that the civil rights Complaint is virtually identical to the Amended *Habeas* Petition. Much like the great solicitude imparted in allowing Ariola the opportunity to air his civil rights grievances in the initial *habeas* action, we shall view the claims raised in this new civil rights action as having been properly, and initially, raised in the earlier *habeas* action. The difference here is that we now have the proper individual Defendants who are alleged to have been personally involved in some constitutional wrongdoing. Thus, we will not bar review of the Complaint based on timeliness.

### 4. Ariola's Contentions

By his § 1983 Complaint, Ariola asserts that:

(1) the parole conditions imposed upon him, specifically conditions 13AA and 5, were unconstitutionally vague and fail to give an ordinary person notice of what is required;

(2) Anderson violated Ariola's due process rights by imposing condition 13AA arbitrarily and capriciously;

(3) the condition/order requiring him to waive his HIPAA rights was invalid;

(4) Anderson violated Ariola's due process rights when he arrested him without a warrant;

(5) Anderson and Moss abused the process of revocation proceedings when they arrested Ariola without a warrant;

(6) Carmody falsely assessed Ariola and provided false testimony at the revocation hearings; and

(7) Carmody and Anderson conspired to violate Ariola's rights.

*Id*. at ¶¶ 38-69.

Generally, the above call to mind four overall challenges being interposed by Ariola. First,

he challenges the constitutionality of the special parole conditions in that such were vague, failed to give him proper notice, and should not have been applied by Anderson. Second, he challenges his arrest and prosecution by Anderson and Moss without a proper warrant. Third, he claims that Carmody falsely assessed him and testified falsely during the revocation proceeding. And, fourth, he claims that Carmody and Anderson conspired to violate Ariola's rights.

<u>a. Constitutionality of Parole Conditions</u>

According to Ariola, special parole condition 13AA reads: "I will enter and complete CNY Services and will not discontinue that program until given written permission by Parole Officer Anderson." Dkt. No. 19, Am. Pet., at ¶ 24. And parole condition 5 required him to be truthful to his parole officer. *Id*. at ¶ 25. Ariola asserts that these conditions are vague both facially and as applied and did not provide him with sufficient notice that his failure to execute HIPAA releases equated to a violation. He also asserts that it was unclear that his failure to advise Anderson of his refusal to sign releases corresponded to a failure to be truthful. Dkt. No. 39, Compl., at ¶¶ 39 & 41-42.

The Supreme Court has held that, pursuant to the protections afforded by the Fourteenth Amendment, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. State of New Jersey*, 306 U.S. 451, 453 (1939) (quoted in *Farrell v. Burke*, 449 F.3d 470, 483 (2d Cir. 2006)). "Vagueness challenges – as-applied and facial alike – require an inquiry into whether the challenged regulation provided adequate standards to limit the discretion of the law enforcement officers." *Farrell v. Burke*, 449 F.3d at 483. When faced with such challenges, a court must determine, objectively, "whether the statute gives adequate notice, and

whether it creates a threat of arbitrary enforcement." *Id*. at 485.

According to the Second Circuit,

> [w]hen the challenge is vagueness 'as applied', there is a two-part test: a court must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provides explicit standards for those who apply it.

*Id*. at 486 (quoting *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993)).

Unlike the condition at issue in *Farrell* concerning a parole condition which prohibited the parolee from possessing pornography, the conditions at issue requiring Ariola to complete CNY Services and to be truthful with his parole officer are not so vague as to fail to provide a person of ordinary intelligence the contours of what activity would be deemed impermissible. Indeed, failing to answer questions posed at an intake session by CNY employees cannot be reasonably construed as complying with the condition of completing services with CNY. According to the documents submitted in these proceedings, CNY could not make an assessment because Ariola refused to answer questions and so they referred him to HPC for another assessment. Ariola's failure to sign medical waivers prevented CNY from setting up that assessment. Ariola claims that he was unaware that his failure to sign waivers would have interfered with a second assessment, yet he reported to his parole officer that he was "appealing" the decision to have a second assessment. But his purported ignorance does not render the condition vague when viewed objectively from a reasonable person perspective.

As for the second prong of the vagueness assessment, we must assess whether the condition provides explicit standards for those applying it. In making this assessment, a court

> may determine either (1) that a statute as a general matter provides sufficiently clear standards to eliminate the risk of arbitrary enforcement or (2) that, even in the absence of such standards, the conduct at issue falls within the core of the statute's prohibition, so that the enforcement before the court was not the result of the

> unfettered latitude that law enforcement officers and factfinders might have in other, hypothetical applications of the statute.

*Farrell v. Burke*, 449 F.3d at 494.

"Where a statute provides insufficient general guidance, an as-applied vagueness challenge may nonetheless fail if the statute's meaning has a clear core." *Id.* at 493 (citations omitted). Thus, if the conduct at issue "falls so squarely in the core of what is prohibited by the law that [then] there is no substantial concern about arbitrary enforcement because no reasonable enforcing officer could doubt the law's application in the circumstances." *Id.* at 494.

Based upon all of the submissions before the Court, we find that the challenged parole conditions provided sufficiently clear standards for conduct. But even if it didn't, Ariola's conduct, to wit, his failure to answer questions during his CNY assessment, and then failure to sign medical waivers to allow for another assessment, fell so clearly within the core of his conditions of parole that it is clear that a reasonable officer would doubt that Ariola complied with his conditions.

As for Ariola's challenge to the facial validity of his parole conditions, such claims must also fail. To succeed on this claim, having failed to establish that the condition was unconstitutionally vague as applied to him, Ariola must "demonstrate that the law is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (quoted in *Farrell v. Burke*, 446 F.3d at 495). Notably, "[w]hen a regulation does not threaten the exercise of fundamental rights, one whose conduct is clearly proscribed by the regulation cannot successfully challenge it for vagueness." *Farrell v. Burke*, 446 F.3d at 495 (internal quotation marks, alterations, and citations omitted). It has been held that "a [p]laintiff's privacy right in his medical records is neither fundamental nor absolute." *Crawford v. Manion,* 1997 WL 148066, at *1 (S.D.N.Y. Mar. 31, 1997) (citing *Whalen v. Roe,* 429 U.S. 589, 603-04 (1977) & *Jarvis v.*

*Wellman,* 52 F.3d 125, 126 (6th Cir.1995), for the proposition that "release of medical records did not violate a fundamental Constitutional right")). While the above statement has been rendered in the context of discovery, it is no less applicable in that the federal statute providing privacy rights to individuals (HIPAA), does not confer a fundamental right. Therefore, it is clear that Ariola's facial challenge to his parole conditions must fail as well.

Because it is clear that Plaintiff's vagueness challenge to his parole conditions fail to state a claim upon which relief could be granted, we recommend dismissing this claim pursuant to 28 U.S.C. § 1915(e).

### b. Arrest and Prosecution

Construing Ariola's claims liberally, it appears that Ariola contends that he was improperly arrested by Anderson and Moss without a warrant and that Anderson thereafter abused the process by pursuing revocation proceedings. Compl. at ¶ 49. Plaintiff's claim is clearly belied by his own factual allegations, as well as the record supplied in this action. First, it is clear that a parole warrant had indeed been issued as references to that warrant are replete throughout the record. *See, e.g.*, State Ct. R., Ex. A, Final Parole Revocation Hr'g Tr. (with numerous references to the warrant number); Ex. B, Parole Revocation Determination (same); & Ex. D, Violation of Release Rep. (noting that a senior parole official had issued the parole warrant after being advised of the facts supporting the violation). The representation of no warrant is particularly disingenuous in light of the fact that Ariola signed a Notice of Violation which specifically references a warrant number. State Ct. R., Ex. D, Notice of Violation. There are no allegations asserting that this warrant was procured using fraud or misrepresentation. And, absent any allegation contesting the validity of the arrest warrant, this Court may presume that probable cause exists, as was found at the conclusion

of the preliminary parole revocation hearing, and therefore would act as a bar against any claim for false arrest. *Jangly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (noting that probable cause is an absolute defense to a false arrest claim). Ariola does not contest the facts underlying the parole violation, but instead claims ignorance that his behavior would have constituted a parole violation. In light of the uncontested facts of events as they unfolded, there is simply no basis upon which Ariola can state that he was falsely arrested or that the process used was an abuse of process. Thus, we recommend dismissing this claim pursuant to 28 U.S.C. § 1915(e).

<u>c. False Testimony</u>

Ariola claims that Carmody completed a false assessment of him at CNY and that she provided false testimony during the final revocation hearing. In making this claim, Ariola attacks Carmody's qualifications as a "qualified health professional" and accuses her of falsely testifying to Ariola's alleged dangerousness in contravention of what Dr. Zebrowski diagnosed. Compl. at ¶¶

As with the prior claim, the facts presented in this action simply do not correspond with Ariola's proffered causes of action. According to the records provided, Dr. Zebrowski made an assessment based upon Ariola's responses and non-responses during the intake session. According to Dr. Zebrowski's affidavit, attached to the Complaint, she made provisional diagnoses based upon the intake process with Carmody and because the diagnoses did not include alcohol/substance abuse, Ariola did not meet the criteria to become a CNY patient and therefore a referral to HPC was made. Compl., Ex. E, Paula Zebrowski Aff., dated June 18, 2009, at ¶¶ 24-28 & 36. In her intake report, Carmody stated that Ariola "displayed very guarded behavior in that he would not sign any releases but this was not paranoid in nature but more domineering. More specifically, [Ariola] displayed very controlling behavior and it was evident that he was pleased with the control he had over the

*-30-*

situation with his information. . . . He displayed a deceitful, manipulative behavior and attitude."
*Id.*, Ex. A.  In the letter she faxed to Parole Officer Anderson, Carmody stated that Ariola was "not cooperative enough in revealing historical information for [CNY] to make an accurate assessment of dangerousness.  Typically when patients are withholding there is either 1) a level of psychosis or 2) a level of dangerousness[.]"  *Id.*, Ex. H.  Carmody's testimony during the final revocation hearing did not touch upon Ariola's purported dangerousness, but instead dealt with her experience with him during the intake session and the reasons why he was referred to HPC.  State Ct. R., Ex. A, at pp. 20-28.  Carmody also testified that CNY could not complete their assessment because he refused to answer questions, and they could not complete a referral to HPC because he refused to sign medical releases.  *Id.*

It is simply unclear to this Court in what manner Ariola alleges that Carmody testified falsely.  And as to the pertinent reason for his ultimate revocation, that being his failure to complete the assessment, there is no dispute between Carmody's testimony and Ariola's account.  Instead, as noted above, he merely disputes that his behavior should have been viewed as a parole violation.  Such conclusory allegation does not state a claim for relief under § 1983.

But even if we assume that Carmody's report and testimony were total prevarications, or laced with false information, Ariola's claims still fail because he has no constitutional right to be free from being falsely accused.  *See Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997).  Just as a prison inmate has no constitutional right to be free from being falsely accused, neither would a parolee, as long as he was provided with adequate due process before being denied his right to liberty.  *See Threat v. Russi*, 784 F. Supp. 65 (W.D.N.Y. 1992).  Here, there is no challenge to the process Ariola received after a notice of parole violation was issued, nor can the Court conceive of

any after reviewing the relevant State Court Record. *See Morrissey v. Warden*, 408 U.S. 471 (1972). Indeed, Ariola received adequate notice of the charges, had a preliminary revocation hearing that determined probable cause existed for the charges, and had a final revocation hearing before a neutral judge. Pointedly, at that final hearing Ariola was represented by counsel and had an adequate opportunity to testify on his own behalf and cross-examine other witnesses that testified. He also pursued timely appeals of the decision rendered to revoke his parole. All of this, and more, satisfied due process. *Id*. at 488-89. Thus, we recommend dismissal of this claim pursuant to 28 U.S.C. § 1915(e).

### d. Conspiracy

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. County of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).

In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted).

There are simply no factual allegations in the Complaint that support Ariola's conclusory statement that Defendants Anderson and Carmody conspired in an effort to inflict an unconstitutional injury. Nor has this Court found any constitutional violation from any of the above allegations examined. Thus, we recommend that this claim be dismissed pursuant to 28 U.S.C. §

1915(e).

## III. CONCLUSION

For the reasons stated herein, and after careful review affording Ariola all possible leniency, it is hereby

**RECOMMENDED**, that the Motion for Judgment on the Pleadings (Dkt. No. 37) be **GRANTED**; and it is further

**RECOMMENDED**, that the Amended *Habeas* Petition (Dkt. No. 19) be **DISMISSED**; and it is further

**RECOMMENDED**, that because the Court finds that Ariola has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should be issued with respect to any of his *Habeas* claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**RECOMMENDED**, that to the extent Ariola's *Habeas* Petition has been construed as brought pursuant to 42 U.S.C. § 1983, it should be **DISMISSED**, in light of the above recommendation to grant the Motion for Judgment on the Pleadings (Dkt. No. 37); and it is further

**RECOMMENDED**, that the consolidated § 1983 Complaint (Dkt. No. 39) should be **DISMISSED** pursuant to 28 U.S.C. § 1915(e) for failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that, in light of the above, this entire action be closed; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   March 31, 2014
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge